UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HIRAM TORRES,

                        Plaintiff,

      -against-                    12 Civ. 6527 (ALC)(SN)

CAROLYN W. COLVIN, Acting            MEMORANDUM
Commissioner of Social Security,            & ORDER

                      Defendant.

------------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

I.    INTRODUCTION

    Plaintiff Hiram Torres commenced this action under 42 U.S.C. § 405(g) seeking review of a final decision by Defendant Commissioner of Social Security Carolyn Colvin ("Commissioner"), denying his claim for social security disability benefits. Plaintiff applied for social security income and disability insurance benefits on August 19, 2009 with a date of alleged onset listed as September 11, 2001. Plaintiff claims his psychiatric problems render him unable to work. After the parties fully submitted their papers on the Motion for Judgment on the Pleadings made by the Commissioner, Magistrate Judge Sarah Netburn issued a Report and Recommendation ("R&R"). Upon a de novo review of the portions of the R&R to which Plaintiff objects, the Court adopts Magistrate Judge Netburn's R&R in its entirety.

## II.     BACKGROUND & PROCEDURAL HISTORY

The facts of this case are set forth in detail in the R&R, and the Court assumes familiarity therewith.

On June 20, 2013, the Commissioner filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. No. 21.) Judge Swain was initially assigned to this case and referred the matter to Magistrate Judge Netburn for a R&R. (Dkt. No. 7.) On December 13, 2013, Magistrate Judge Netburn issued a comprehensive R&R, recommending the Commissioner's Motion be granted because substantial evidence in the record supported the ALJ's findings that Plaintiff was not disabled and was not entitled to benefits. (Dkt. No. 29.)

The R&R was adopted on January 22, 2014 after neither party submitted objections by the December 30, 2013 deadline. (Dkt. No. 30.) On January 27, 2014, Plaintiff requested an extension of time to submit objections, claiming he never received the R&R. (Dkt. No. 31.) The Court granted Plaintiff an extension to file objections until February 11, 2014. (Dkt. No. 32.) That day, Plaintiff, proceeding pro se at the time, submitted his objections and requested pro bono counsel. (Dkt. Nos. 33, 34.) The Commissioner subsequently filed a response to Plaintiff's objections. (Dkt. No. 36.)

Pro bono counsel was appointed on February 27, 2014, and newly-appointed counsel requested permission to file supplemental objections on Plaintiff's behalf. (Dkt. Nos. 40, 41.) The Court granted the request, and Plaintiff filed supplemental objections on April 4, 2014. (Dkt. Nos. 42, 43.) The Commissioner responded on July 7, 2014. (Dkt. No. 49.) The Court considers Plaintiff's initial and supplemental objections in reviewing the R&R.

III.   THE PARTIES' ARGUMENTS

First, Plaintiff contends the ALJ's finding that he was engaged in substantial gainful activity ("SGA") is erroneous because the evidence demonstrating SGA was falsified by his psychotherapist. Specifically, Plaintiff claims his therapist told him that "his methadone pick-up schedule could be changed to one time per week if he worked." (Pl.'s Supp. Objs. 11.) Next, Plaintiff claims although the ALJ agreed his impairments were severe, the ALJ erred in finding his impairments did not medically equal the impairments found in the regulations. In making that finding, Plaintiff maintains the ALJ disregarded the treating physician rule. Lastly, Plaintiff opposes the ALJ's findings that he could perform his prior relevant work or comparable jobs in the economy based on his residual functional capacity.

The Commissioner contends it was Plaintiff's burden to establish that he was no longer engaged in SGA, and he failed to meet that burden. Additionally, Plaintiff's supplemental declaration, which he submitted to rebut the contention that he had been working during the time he was applying for benefits, "contain[ed] many references to information outside the administrative record, without citation, including many references to current information, never considered by the ALJ." (Gov't's Opp. to Pl.'s Supp. Objs. 9 n.4.) The Commissioner contends Plaintiff has not established just cause for the inclusion of this new evidence, and it is not sufficiently probative to warrant a remand for further proceedings. The Commissioner also argues the ALJ properly determined Plaintiff's conditions failed to meet the criteria of a regulations-level impairment by weighing the opinions of treating and consultative physicians with all of the evidence in the record. Finally, the Commissioner claims the ALJ properly found Plaintiff was able to perform past relevant work or other work in the economy using the testimony of a vocational expert.

## IV. DISCUSSION

### A. Standard of Review

In deciding whether to adopt a R&R, "the Court makes 'a de novo determination of those portions of the report...to which objection is made' and may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate." Artenberg v. Comm'r of Soc. Sec., No. 04 Civ. 4506 (RMB)(THK), 2006 WL 59558, at *1 (S.D.N.Y. Jan. 10, 2006) (quoting Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989)). When reviewing portions of a R&R that have not been objected to, a district court need only satisfy itself that no clear error was made. Terio v. Michaud, No. 10 Civ. 4276 (CS), 2011 WL 868661, at *1 (S.D.N.Y. Mar. 10, 2011).

At the outset, the Commissioner contends Plaintiff's objections contest the findings of the ALJ, not the magistrate judge. (Gov't's Opp. to Pl.'s Supp. Objs. 6.) Consequently, Plaintiff made no specific objections to the R&R, and it should therefore be evaluated solely for clear error. (Id.) The Court finds this argument unpersuasive and conducts a de novo review of those portions of the R&R to which Plaintiff objects.

The Commissioner's findings regarding the disability of a claimant are given deference, and the district court's review of the Commissioner's decision is limited to establishing whether the determination is supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); see also Hopkins v. Colvin, No. 13 Civ. 4803 (AT)(AJP), 2014 WL 2526837, at *11 (S.D.N.Y. June 5, 2014) ("[T]he role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision."). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" which must be "more than a mere scintilla." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Richardson

v. Perales, 402 U.S. 389, 401 (1971)). "If substantial evidence supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result." Ventura v. Barnhart, No. 04 Civ. 9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

**B.   Analysis**

To qualify for Social Security benefits, a claimant must prove "disability," which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is considered disabled if his or her physical and/or mental impairment prevents him or her from not only engaging in prior work, but any suitable work that exists in the national economy. Id. § 423(d)(2)(A).

The Commissioner evaluates whether an individual is disabled under a five-step sequential process:

> [1] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. [2] If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. [5] Finally, if the claimant is unable to perform his past work, the [Commissioner] then

determines whether there is other work which the claimant could perform.

Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010) (quoting Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999)). Step two is not discussed in this Order since the Commissioner's finding was favorable to Plaintiff.

### i. Plaintiff's Engagement in Substantial Gainful Activity

Plaintiff's first objection challenges the finding that he was engaged in SGA from 2008 to 2010. Plaintiff claims, however, he has not worked since 2001. The ALJ determined at step one that "[t]he claimant is and has engaged in 'substantial gainful activity' (SGA) at all times relevant to this decision" due to twelve incidents in the record where Plaintiff stated to his therapist that he was consistently working as a stable hand at Belmont Racetrack. (R. at 19, 22.) Magistrate Judge Netburn found Plaintiff's engagement in SGA was supported by substantial evidence in the record and cited four additional instances where Plaintiff spoke about his employment. (R&R at 19.) At the hearing, Plaintiff testified the portions of the record mentioning his work history after 2001 were false. (R. at 18.) He maintained his therapist encouraged him to lie about working in order to receive his methadone treatment weekly instead of daily. (Id.) The ALJ found Plaintiff's explanation "downright nonsensical," stating, "I made it perfectly clear to Plaintiff and his counsel that I did not believe that claimant had not been working." (Id. at 18, 21.)

When evaluating if a claimant has engaged in SGA, the ALJ may take into account inconsistencies between the claimant's testimony and the other evidence in the record. Nunez v. Astrue, No. 11 Civ. 8711 (PKC), 2013 WL 3753421, at *11-12 (S.D.N.Y. July 17, 2013) ("It is well within the discretion of the Commissioner to evaluate the credibility of a claimant's

complaints and render an independent judgment in light of the medical findings and other evidence . . . ." (citing Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984))).  Moreover, courts routinely give deference to the credibility determinations of the ALJ. See, e.g., Marquez v. Colvin, No. 12 Civ. 6819 (PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) ("[C]ourts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe the plaintiff's demeanor while [the plaintiff was] testifying." (citing Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994))); Molina v. Colvin, No. 13 Civ. 4989 (AJP), 2014 WL 3445335, at *13 (S.D.N.Y. July 15, 2014) (same); Tavarez v. Barnhart, 05 Civ. 2747 (DLC), 2006 WL 997701, at *5 (S.D.N.Y. Apr. 17, 2006) ("[D]eterminations of witness credibility must be made by the Secretary, not the reviewing court." (citing Aponte v. Sec'y of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1988))).

In reviewing the record, there is ample evidence to support the ALJ's determination that Plaintiff was engaged in SGA, and his testimony regarding the therapist's falsified notes was not credible.  Although Plaintiff testified he had not been employed since 2001, the record contains at least sixteen references to Plaintiff's work history of varying detail and frequency. (R. at 19, 264, 267-68, 275, 277-79, 281-82, 289, 292-93, 295-96, 298, 303); (R&R at 18-19.)  The ALJ found, "Mr. Torres has some very serious credibility problems,to say the least.  These records so clearly, frequently and specifically document his ongoing, full-time work activities that I can and do conclude he was simply not telling the truth about them." (R. at 20.)  In fact, the ALJ observed several topics about which Plaintiff was less than candid when he testified, including visiting his children, taking care of his mother, and socializing with his friends. (Id. at 21.)

Moreover, Magistrate Judge Netburn cited multiple occasions in the record where Plaintiff seemingly gave care providers inaccurate information about his life and medical history,

such as when he stopped working, why he stopped working, how long he had been seeing Dr. Patel, and whether he had a substance abuse problem. (R&R at 22.) Plaintiff offers no reason to reject the ALJ's assessment of the inconsistencies between his statements and the record's numerous references to his employment. See Kentile v. Colvin, No. 13 Civ. 880 (MAD)(CFH), 2014 WL 3534905, at *18 (N.D.N.Y. July 17, 2014) ("[T]he Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence and/or the lack of medical treatment."). As such, substantial evidence suggests Plaintiff's testimony was not reliable, and he was engaged in SGA during the time for which he was applying for benefits.

### a. New Evidence

To rebut the ALJ's findings, Plaintiff seeks to introduce new evidence pertaining to his inability to work. This evidence is comprised of Plaintiff's declaration, stating his therapist at the Concourse Medical Center told him to lie about working so he could pick up his methadone treatments once a week, and a form from the New York Department of Social Services State Office of Temporary and Disability Assistance, which exempted him from temporary assistance work activities because of a medical issue. (Torres Decl., Dkt. No. 44; Usinskaite Decl. Ex. B, Dkt. No. 46.)

When new evidence is presented, district courts have the authority to remand a case to the Commissioner "only upon a showing that . . . [the] new evidence . . . is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In order for new evidence to be considered, it must not be cumulative of what is already contained in the record, the evidence must be material for the time period in dispute, the evidence must be reasonably able to convince the Commissioner to decide differently, and

Plaintiff must show good cause for failing to present the evidence earlier. Lisa v. Sec'y of Health & Human Services, 940 F.2d 40, 43 (2d Cir. 1991).

Plaintiff's proposed additions to the record fail to meet the criteria for accepting new evidence. Plaintiff's declaration contains no new information, largely repeating what Plaintiff stated while testifying at the hearing before the ALJ. (R. at 33-35.) Additionally, Plaintiff has not shown good cause for failing to present this evidence earlier. The form from the Department of Social Services is immaterial since it would not reasonably cause the Commissioner to decide this case differently.

### b.    The Duty to Develop the Record

Plaintiff further argues even if the ALJ suspected he was engaged in SGA, the ALJ had a duty to develop the record. Due to the inconsistencies between Plaintiff's testimony and the medical documentation, the ALJ held the record open for a few weeks so the parties could submit additional evidence. Neither party made a submission. (Id. at 18-19.) Magistrate Judge Netburn concluded the ALJ satisfied his duty to develop the record because he left the record open to allow Plaintiff to submit additional evidence regarding his work history. (R&R at 26.)

The ALJ satisfied his obligation in evaluating Plaintiff's work history. It is undisputed that an ALJ has the duty to make every reasonable effort to develop the record. 42 U.S.C. § 423(d)(5)(B); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). "The ALJ must seek additional evidence or clarification when the 'report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all of the necessary information . . . .'" Rivera v. Barnhart, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005) (quoting 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)).

9

Here, the ALJ permitted additional information about Plaintiff's work history since the only available evidence suggested that Plaintiff worked off the books at some point during the period for which he was seeking benefits. (R. at 18-19.) The ALJ specifically mentioned in his decision, "[Plaintiff's] counsel had an opportunity to have the therapist refute [the fact that Mr. Torres was working] but was unable to have her do [sic]." (Id. at 22.) Because the record was held open and Plaintiff failed to provide supplemental evidence, the ALJ fulfilled his duty to develop the record. See Farrell v. Comm'r of Soc. Sec., No. 12 Civ. 418 (GLS), 2013 WL 4455697, at *7-8 (N.D.N.Y. Aug. 16, 2013) (finding that an ALJ who held the record open for additional documents fulfilled his duty to develop the record because the ALJ's duty "is not without limit"); Colon v. Apfel, No. 98 Civ. 4732 (HB), 2000 WL 282898, at *5 (S.D.N.Y. Mar. 15, 2000) (collecting cases holding the ALJ fulfilled his duty when he allowed the record to remain open so counsel could submit additional evidence).

### ii. Impairments that Meet or Medically Equal those in the Regulations

Assuming arguendo that Plaintiff was not engaged in SGA, the ALJ proceeded through the five-step analysis. He determined at step three that Plaintiff's major depressive disorder, anxiety disorder (not otherwise specified), and substance abuse did not meet or medically equal the impairments in the "Listings."[1] (R. at 22.) The ALJ reached this conclusion in spite of the

---

[1] As previously described, at the third step of the analysis,

> [T]he ALJ must determine whether the claimant's conditions meet or equal the requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments describes, 'for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity.' 20 C.F.R. §§ 404.1525(a), 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Bull v. Comm'r of Soc. Sec., No. 05 Civ. 1232 (LEK)(RFT), 2009 WL 799966, at *4 (N.D.N.Y. Mar. 25, 2009).

opinion of Plaintiff's treating psychiatrist, Dr. Rajesh Patel. Dr. Patel's October 30, 2010 report included a box he checked establishing impairments meeting the criteria in the Listings:

> Medically documented history of a chronic organic mental, schizophrenic, or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

(Id. at 359.)

The ALJ rejected Dr. Patel's assessment as a "check off adoption of that criterion," elaborating that it was internally inconsistent with other portions of the report and inconsistent with the other evidence in the record. (Id. at 21.) In fact, Dr. Patel consistently stated in his evaluation notes that Plaintiff was stable and doing reasonably well for long periods of time. (Id. at 20.) The ALJ therefore concluded, "Dr. Patel's functional assessment … [was] not borne out of the evidence, including the Concourse records." (Id.) The ALJ agreed with the opinions of Drs. Joseph Vitolo and L. Blackwell, who examined the medical records and found that Plaintiff's conditions fell "far short of Listings level severity." (Id. at 21.) Lastly, the ALJ evaluated Plaintiff's testimony concerning his work, his symptoms, and his ability to function socially and determined that Plaintiff was "trying to portray himself as far less functional than he is." (Id.) Magistrate Judge Netburn concurred that this evidence provided substantial support in the record for determining Plaintiff's impairments did not medically equal impairments in the Listings, contrary to Dr. Patel's October 30, 2010 report. (R&R at 32.)

Plaintiff argues Magistrate Judge Netburn erred by failing to observe that the ALJ improperly ignored the treating physician rule. The treating physician rule "generally requires a measure of deference to the medical opinion of a claimant's treating physician." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Id. at 32 (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)); 20 C.F.R. § 404.1527(d)(2). "[T]he less consistent an opinion is with the record as a whole, the less weight it is to be given." Stevens v. Barnhart, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007).

A treating physician's opinion that a claimant is "disabled" or "unable to work" is not automatically controlling. It is only given "controlling weight if it is well-supported by medical findings and not inconsistent with the other substantial evidence in the administrative record." Murphy v. Barnhart, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *7 (S.D.N.Y. Jan. 21, 2003). When an ALJ does not defer to the treating physician's opinion, he must consider the following factors:

> Length of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . ., particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(5)) (quotation marks omitted). Importantly, if the ALJ departs from the opinion of a treating physician, he must "give good reasons" explaining why the opinion is not being credited. 20 C.F.R. § 404.1527(c)(2); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

While the treating physician rule is consistently applied in this Circuit, the treating physician's opinion, on its own, is not determinative of whether a claimant's disability meets the criteria of a Listings-level impairment. The ultimate decision is reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . , the final responsibility for deciding [this issue] is reserved to the Commissioner."). "Treating physician opinions regarding the criteria for a Listing are not entitled to controlling weight. . . . Nevertheless, the ALJ must still consider those opinions when evaluating disability." Hendricks v. Comm'r of Soc. Sec., 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006) (internal citations omitted).

There is substantial evidence in the record supporting Magistrate Judge Netburn's determination that the ALJ gave "good reasons" for rejecting Dr. Patel's conclusion and thus, did not misapply the treating physician rule. First, Dr. Patel's medical findings did not reflect that Plaintiff's impairments coincided with the box checked in his report. For example, the Concourse chart notes indicate after June of 2009, Plaintiff's symptoms were "almost fully controlled except, briefly, when he ran out of medications . . . ." (R. at 20.) The ALJ's review of Plaintiff's medical notes led him to conclude, "Generally speaking [Plaintiff] was stable and doing reasonably well, and, of course, the notes repeatedly document him as working." (Id.) In addition, Dr. Patel rated several of Plaintiff's abilities as "limited but satisfactory," such as understanding and remembering short and simple instructions and maintaining regular attendance and punctuality within customary tolerances. (Id. at 360.) The most severe rating Dr. Patel ascribed to Plaintiff's abilities was "seriously limited, but not precluded." (Id. at 361.)

Drs. Meadow, Blackwell, and Vitolo, on the other hand, opined consistently that Plaintiff could function with his impairments. Dr. Vitolo testified that Plaintiff "was doing well working at the track . . . with the mental statuses that were within normal limits and the cognitive exams were within normal limits." (Id. at 45.) Dr. Herbert Meadow, at an October 2008 consultative evaluation, diagnosed Plaintiff with the aforementioned illnesses but generally found Plaintiff's impairments did not prevent him from functioning on a daily basis. (Id. at 20.) Dr. Blackwell observed although he may have problems handling social interaction and stress, Plaintiff's conditions caused him "mild" deficits in activities of daily living and social functioning, and "moderate" ones in concentration, persistence, and pain. (Id.) Since the record overwhelmingly showed Plaintiff's impairments did not medically equal those in the regulations, with additional support from the opinions of the consultative physicians, the ALJ's decision at step three is sustained by substantial evidence.

Notably, the ALJ's opinion does not directly mention the treating physician rule. So long as his findings and the reasons set forth in support thereof have adequate foundation in the record, Plaintiff has still been afforded the procedural protections of the treating physician rule. See, e.g., Halloran, 362 F.3d at 33 (upholding a decision where although the ALJ did not expressly acknowledge the treating physician rule, the ALJ correctly applied the substance of it); Rivera v. Comm'r of Soc. Sec., 728 F. Supp. 2d 297, 326 (S.D.N.Y. 2010) (noting even though the ALJ did not expressly mention the doctors as treating physicians, his opinion indicated he viewed them as such despite rejecting their opinions). Notwithstanding the conclusion that the ALJ correctly applied the rule by providing sound reasons for rejecting Dr. Patel's conclusion based on substantial evidence before him, the Court points out that our Circuit "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given

14

to a treating physicians opinion." Halloran, 362 F.3d at 33. But, a remand is not necessary in this case.

### iii. Plaintiff's Ability to Perform Prior Relevant Work

Plaintiff contends Magistrate Judge Netburn incorrectly affirmed the ALJ's findings that Plaintiff was able to perform his prior relevant work as a stable hand. Plaintiff asserts the ALJ's findings were not supported by substantial evidence and again disregarded the treating physician rule. Magistrate Judge Netburn concluded the ALJ appropriately applied the principles of the treating physician rule. (R&R at 32-33.) Magistrate Judge Netburn also found while the ALJ did not explicitly state use of the rule, his use could be inferred from his reasoning. (Id. at 33.)

Substantial evidence in the record supports the ALJ's application of the treating physician rule, and the ALJ's determination that based on Plaintiff's residual functional capacity, he could perform his prior relevant work.[2] Plaintiff's statements on numerous occasions to his therapist reflect that he was consistently working as a stable hand after the alleged onset of his disability. Further, Dr. Patel's records could be reasonably interpreted as indicating Plaintiff is capable of performing simple, unskilled work, and he can satisfactorily maintain regular attendance, be punctual within custom, and make simple work-related decisions. (R. at 22, 360.) Even more, Dr. Patel seemingly believed Plaintiff is not completely precluded from engaging in semi-skilled and skilled labor. (Id. at 361.) From these records, the ALJ concluded that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels" with certain specified limitations. (Id. at 22.)

---

[2] Residual functional capacity "represents an assessment of [Plaintiff's] 'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. It is the most a claimant can still do despite his or her limitations.'" Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (quoting 20 C.F.R. § 416.1545(a)(1)).

While Dr. Patel stated in 2009 that Plaintiff could not work, his findings were undermined by the therapist's notes, which plainly described Plaintiff as routinely working. In rejecting Dr. Patel's assessment, the ALJ also relied on testimony from Dr. Vitolo. (Id. at 20.) Dr. Vitolo generally agreed with Dr. Patel's diagnoses but determined with Plaintiff's "moderate limitations," he could work provided the following restrictions were instituted: "claimant would be mentally capable of simple, repetitive, low stress work tasks with one or two step commands and limited amounts of social interaction." (Id. at 20, 43-44.)

Using the limitations set forth by Dr. Vitolo and the opinion of a vocational expert, the ALJ decided Plaintiff's prior work would be suitable employment in light of his disabilities. Dr. Vitolo further opined Plaintiff would not have difficulty returning to his prior work as a stable hand because interaction with the horses would not exceed his social limitations. (Id. at 47.) Ultimately, taking all of the medical evidence into account, including the therapist's notes which repeatedly reference Plaintiff's work at the racetrack, there is substantial support for the conclusion that Plaintiff could have performed his prior relevant work as a stable hand, notwithstanding the disagreement of his treating physician. See Rivera, 728 F. Supp. 2d at 326 (finding "the ALJ validly rejected [the treating] physicians' opinions because they conflicted with plaintiff's admitted daily activities and other evidence in the record").

      iv.      **Plaintiff's Ability to Perform Other Work**

At the fifth step, the ALJ determined that Plaintiff could perform other "medium, unskilled jobs" so long as the limitations set forth by Dr. Vitolo were taken into account. (R. at 22.) The ALJ relied on vocational expert Melissa Fass-Karlin to find that such jobs "exist in significant numbers in the national and regional economies." (Id.) Magistrate Judge Netburn

16

agreed and noted Plaintiff did not challenge the credibility of the source of the vocational expert's numbers during the hearing. (R&R at 36.)

At the fifth step, the burden shifts to the Commissioner to find other work Plaintiff could perform in the local and national economy within his residual functional capacity. A vocational expert must be consulted if a claimant has non-exertional limitations that have more than a "negligible" impact on the claimant's ability to perform the full range of work. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). During the vocational expert's testimony, "[t]he ALJ must pose hypothetical questions to the vocational expert which reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for [his or her] testimony." Sanchez v. Barnhart, 329 F. Supp. 2d 445, 449 (S.D.N.Y. 2004). "There must, however, be 'substantial record evidence to support the assumption upon which the vocational expert based his opinion.'" Id. at 450 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983)).

During the hearing, the ALJ properly posed hypothetical questions based on Plaintiff's limitations and asked vocational expert Melissa Fass-Karlin to identify any available jobs for an individual of Plaintiff's age, education, and prior work experience that were limited to simple, routine, repetitive jobs involving one or two step commands, limited social contact, and low amounts of stress. (R. at 48.) Fass-Karlin testified that, in accordance with the Dictionary of Occupational Titles, Plaintiff could perform the jobs of hand packager, cleaner, and meat clerk, which existed in significant numbers in the local and national economy.[3] (Id.) Therefore, the ALJ properly elicited expert testimony to conclude Plaintiff could perform other jobs in the local and national communities in light of his residual functional capacity.

---

[3] "The Dictionary of Occupational Titles ('DOT') is used to evaluate jobs as they are generally performed." Paulino v. Colvin, No. 13 Civ. 3718 (AT)(AJP), 2014 WL 2120544, at *19 (S.D.N.Y. May 13, 2014) (citation omitted). A vocational expert can rely on information available from governmental and other publications, such as the DOT, in forming his or her opinions. 20 C.F.R. § 416.966(d); Sanchez, 329 F. Supp. 2d at 449.

17

Lastly, Plaintiff argues the ALJ failed to consider his memory impairment in evaluating his residual functional capacity to perform past relevant work or equivalent jobs. Yet, there is no evidence in the record of Plaintiff's purported memory issues that would have precluded him from maintaining his prior relevant work or other comparable jobs. Although Dr. Patel stated Plaintiff had a progressive memory impairment, there was no medical evidence to substantiate that opinion. (Id. at 359, 371.) To the contrary, Dr. Vitolo found the record contained little to no complaints of memory or forgetfulness, and Dr. Patel's examination did not indicate that Plaintiff's memory was compromised, or even show a cognitive evaluation was performed. (Id. at 45.) Thus, the Court finds no error in the ALJ's assessment of Plaintiff's residual functional capacity or the existence of work that Plaintiff would be capable of performing.

## V.   CONCLUSION

For the reasons fully stated above, the Court finds Plaintiff's objections to the R&R are without merit after a de novo review of the record. The Court finds no clear error in the portions of the R&R to which Plaintiff does not object. Accordingly, Magistrate Judge Netburn's comprehensive and well-reasoned R&R is **ADOPTED** in full. Defendant's Motion for Judgment on the Pleadings is **GRANTED**. The Clerk of the Court is respectfully directed to close this case from the Court's active docket and enter judgment consistent with this Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

**Dated:**   New York, New York
            September 8, 2014

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**